UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ABDIEL ECHEVERRIA and ISABEL
SANTAMARIA,**

**Plaintiffs,**

v.

**Case No: 6:10-cv-1933-Orl-28DAB**

**BAC HOME LOANS SERVICING, LP
and BANK OF AMERICA, N.A.,**

**Defendants.**

_____/

**ORDER**

In this case, Plaintiffs, Abdiel Echeverria ("Echeverria") and Isabel Santamaria

("Santamaria"), have filed *pro se* a four-count Third Amended Verified Complaint ("Third

Amended Complaint") (Doc. 49) against Defendants, BAC Home Loans Servicing, LP

("BAC") and Bank of America, N.A. stemming from BAC's conduct while servicing

Plaintiffs' home loan.  Defendants have filed a motion to dismiss and a motion for

summary judgment as to all claims.[1]  As explained below, the Court concludes that

Counts Three (RICO) and Four ("Infliction of Emotional Distress") do not survive

Defendants' Motion to Dismiss and that Counts One (RESPA) and Two (Fraudulent

---

[1] The relevant filings before the Court are Defendants' Motion to Dismiss (Doc. 53), Plaintiffs'
Response in Opposition to Defendants' Motion to Dismiss (Doc. 56), Defendants' Motion for Summary
Judgment (Doc. 57), Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment
(Doc. 61), and Defendants' Reply (Doc. 63) thereto.

Misrepresentation) do not survive Defendants' Motion for Summary Judgment. The Court will address each motion in turn.[2]

## I. Background

Plaintiffs purchased their home on February 29, 2008, with loan assistance from the Federal Housing Administration. (Third Am. Compl. ¶ 1). On the same day, Plaintiffs executed a promissory note in favor of the original lender, Taylor, Bean & Whitaker Mortgage Corporation ("TBW"). (Id. ¶ 13). Later, in September 2009, a third party not affiliated with TBW or Defendants informed Plaintiffs that their loan had been sold to BAC. (Id. ¶ 14). Plaintiffs requested a loan modification from BAC in 2009 but were told that they did not qualify. (Id. ¶ 17). Plaintiffs eventually missed their loan payment for November 2009. (Id.). Plaintiffs allege that BAC then told them in January 2010 that they "pre-qualified for a loan modification." (Id.). On September 27, 2010, BAC denied Plaintiffs' request for a loan modification. (Id. ¶ 22).

## II. Motion to Dismiss

Plaintiffs' Third Amended Complaint alleges four counts against Defendants— violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq. (Count One); Fraudulent Misrepresentation (Count Two); violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. (Count Three); and "Infliction of Emotional Distress" (Count Four).

---

[2] As an initial matter, Plaintiffs assert that Defendants' Motion for Summary Judgment is premature because it was filed before the close of discovery. (Pls.' Resp. to Mot. for Summ. J. at 2). Plaintiffs are incorrect. Federal Rule of Civil Procedure 56(b) provides that "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Plaintiffs have not identified any discovery that they need in order to respond adequately to Defendants' Motion for Summary Judgment.

## A. Legal Standard for Motions to Dismiss

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations'" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

## B. Count Three—RICO

Plaintiffs claim that Defendants are liable to them under 18 U.S.C. § 1964(c) for alleged "racketeering activity" including mail fraud, wire fraud, theft, and forgery. (Third Am. Compl. ¶ 56). Section 1964(c) provides for recovery only for "[a]ny person injured in his business or property." "[T]he Supreme Court has declared that Congress' limitation of recovery to business or property injury 'retains restrictive significance. It would for example exclude personal injuries suffered.'" Genty v. Resolution Trust Corp., 937 F.2d 899, 918 (3d Cir. 1991) (quoting Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979)). Accordingly, "[a] plaintiff asserting a claim under § 1964(c) of RICO must allege economic injury arising from the defendant's actions." Ironworkers Local Union 68 v. AstraZeneca Pharms, LP, 634 F.3d 1352, 1361 (11th Cir. 2011).

Despite this Court's prior ruling to the contrary, Plaintiffs continue to assert that their personal injuries can satisfy the injury element of a RICO claim.[3] Plaintiffs allege

---

[3] In dismissing the RICO claim in Plaintiffs' Second Amended Verified Complaint (Doc. 31), this Court explained that RICO "exclude[s] personal injuries suffered . . . [and that because] Plaintiffs only

3

that "Isabel Santamaria . . . was injured in her 'property' when bombarded with threats via mail communication ('mail fraud') and harassing telephone calls made to her home telephone number" and that "Plaintiff's emotional and physical symptoms were displayed and initiated on her property." (Third Am. Compl. ¶ 61). Plaintiffs' creative attempt to construe personal injuries suffered in one's home as injuries in one's "property" is of no avail. Section 1964(c) excludes personal injuries, see, e.g., Genty, 937 F.2d 899, and therefore Plaintiffs' allegations of emotional distress and related physical symptoms do not suffice to state a claim under RICO. Plaintiffs' RICO claim is therefore **DISMISSED** with prejudice.[4]

## C. Count Four—Infliction of Emotional Distress

While Plaintiffs bring a single count for "Infliction of Emotional Distress," it is clear that they intend to state a claim for both intentional infliction of emotional distress and negligent infliction of emotional distress. Plaintiffs allege that they suffered emotional distress and related physical injuries as a result of Defendants' "intentional, reckless, and/or negligent" conduct. (Third Am. Compl. ¶ 76). The allegedly wrongful conduct consists entirely of actions related to Plaintiffs' loan modification application and the servicing of Plaintiffs' loan, such as "threatening with foreclosure over the phone and by mail" and "repeatedly losing or misplacing Plaintiff[s'] personal and financial documentation." (Id. ¶ 73).

To establish a cause of action for *intentional* infliction of emotional distress, a plaintiff must show that the intentional conduct was "so outrageous in character, and so

---

allege physical damages as a result of Defendants' actions, Plaintiffs have . . . failed to plead [an] essential element of a RICO action." (Order, Doc. 43, at 10).

[4] Even if Plaintiffs had pleaded facts sufficient to state a RICO claim, that claim would not survive summary judgment. Plaintiffs have not presented any evidence to show a genuine dispute of material fact as to whether they suffered injury in their "business or property."

extreme in degree, as to go beyond all possible bounds of decency." Metro. Life Ins. Co. v. McCarson, 467 So. 2d 277, 278-79 (Fla. 1985); see also Scheller v. Am. Med. Int'l, Inc., 502 So. 2d 1268, 1270-71 (Fla. 4th DCA 1987). Whether the alleged conduct meets this exacting standard is a question for the court to decide as a matter of law. Vance v. S. Bell Tel. & Tel. Co., 983 F.2d 1573, 1575 n.7 (11th Cir.1993). The facts pleaded in the Third Amended Complaint do not rise to the requisite degree of outrageousness, and thus Count Four fails insofar as it attempts to set forth a claim of intentional infliction of emotional distress.

In Florida, claims for *negligent* infliction of emotional distress are "governed by the judicially-created 'impact rule' designed to assure the validity of claims for emotional distress." Novella v. Wal-Mart Stores, Inc., 459 F. Supp. 2d 1231, 1235 (M.D. Fla. 2006) (citing Int'l Ocean Tel. Co. v. Saunders, 32 Fla. 434 (1893)). "The impact rule . . . requires that 'before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact.'" S. Baptist Hosp. of Fla. v. Welker, 908 So. 2d 317, 320 (Fla. 2005) (quoting R.J. v. Humana of Fla., Inc., 652 So. 2d 360, 362 (Fla. 1995). Although Florida courts "have carved out limited exceptions to the impact rule in extraordinary circumstances, [these exceptions] have been 'narrowly created and defined in a certain very narrow class of cases in which the foreseeability and gravity of the emotional injury involved, and the lack of countervailing policy concerns, have surmounted the policy rational[e] undergirding application of the impact rule.'" Novella, 459 F. Supp. 2d at 1235-36 (quoting Rowell v. Holt, 850 So. 2d 474, 478 (Fla. 2003)). Plaintiffs have not alleged any "impact," nor do they allege any facts on which an

5

exception to the impact rule would apply. Hence, Count Four also fails to state a claim for negligent infliction of emotional distress.

Accordingly, Plaintiffs have failed to state a claim for intentional infliction of emotional distress and for negligent infliction of emotional distress.[5] Count Four is therefore **DISMISSED** with prejudice.

### D. Counts One and Two

With respect to Counts One (RESPA) and Two (Fraudulent Misrepresentation), the Court concludes that the Third Amended Complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). As explained below, however, these counts do not survive Defendants' Motion for Summary Judgment.

### III.    Summary Judgment

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court construes the facts and all reasonable factual inferences in the light most favorable to the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, when faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual

---

[5] Even if Plaintiffs had pleaded facts sufficient to state a claim for either intentional infliction of emotional distress or negligent infliction of emotional distress, those claims would not survive summary judgment. Plaintiffs have not presented any evidence to show a genuine dispute of material fact as to whether Defendants' conduct went "beyond all possible bounds of decency" or as to whether Plaintiffs suffered any "impact."

evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." Sawyer v. Southwest Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986)).

"[A]t the summary judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" Sawyer, 243 F. Supp. 2d at 1262 (quoting Anderson, 477 U.S. at 251-52).

## B. Count One—RESPA

"RESPA provides for certain disclosure requirements to be followed by the entities or persons responsible for servicing a federally related mortgage loan, including disclosures of any assignment, sale, or transfer of the loan." McCarley v. KPMG Int'l, 293 F. App'x 719, 722 (11th Cir. 2008). Plaintiffs allege that Defendants violated U.S.C. § 2605(e) by failing to respond adequately to Plaintiffs' "qualified written requests" and that Defendants violated § 2605(c) by failing to send Plaintiffs a notice within the statutorily required time period that the loan had been transferred to BAC.

7

## 1.    § 2605(e)

To succeed on a claim under § 2605(e), Plaintiffs must show:    (1) that Defendants are servicers; (2) that Defendants received a qualified written request ("QWR") from the borrower; (3) that the QWR related to the servicing of the loan; (4) that Defendants failed to respond adequately; and (5) that Plaintiffs are entitled to actual or statutory damages. 12 U.S.C. § 2605(e); <u>Frazile v. EMC Mortg. Corp.</u>, 382 F. App'x 833, 836 (11th Cir. 2010) (holding that a damages allegation "is a necessary element of any claim under § 2605"). A QWR is defined as:

> [A] written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—
>
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). In other words, under subsection (ii) a QWR must (1) give a statement of the reasons that the account was in error or (2) seek other information regarding the servicing of the loan.    "The term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." <u>Id.</u> § 2605(i)(3).

Defendants move for summary judgment on the grounds that they responded to any QWRs in compliance with RESPA and that Plaintiffs have not presented any evidence of damages, which is "a necessary element of any claim under § 2605."

8

<u>Frazile</u>, 382 F. App'x at 836. To support their RESPA claim, Plaintiffs point to three specific letters they sent to BAC. (Third Am. Compl. ¶¶ 15, 16).

The first letter on which Plaintiffs rely is a QWR. The letter is dated March 24, 2010 and includes a fax cover sheet showing that Plaintiffs' attorney[6] sent it on April 30, 2010. (Ex. A-1 to Third Am. Compl.). The letter contains a number of requests for information related to payments Plaintiffs made on their mortgage account. (Id.). Defendants, in turn, point to a May 10, 2010 letter from BAC acknowledging Plaintiffs' attorney's request, (Ex. A to Decl. of Paul W. Ettori ("Ettori Decl.")), and another letter, dated May 14, 2010, which contains a more comprehensive response, (Ex. B to Ettori Decl.). Plaintiff Echeverria could not recall during his deposition having ever seen these letters before. (Echeverria Dep. at 102-03). Plaintiff Santamaria acknowledged in her deposition that she learned of these response letters when she obtained her attorney's records "many months later." (Santamaria Dep. at 128-29). Plaintiffs do not dispute in their Response that these letters constitute an adequate response under RESPA. Accordingly, there is no genuine dispute of fact as to whether Defendants responded to the March 24, 2010 letter in compliance with RESPA.

The second letter on which Plaintiffs rely is not a QWR. Plaintiffs attached to their Complaint a July 10, 2010 letter to BAC that requests only the "Promissory Note [Plaintiffs] signed on February 29, 2008." (Ex. A-2 to Third Am. Compl.). As Defendants point out, this request does not relate to the "servicing" of Plaintiffs' loan, and therefore it is not a QWR. <u>See, e.g.</u>, <u>Jones v. PNC Bank, N.A.</u>, Civil Action No. 10-

---

[6] Although Plaintiffs are proceeding *pro se* in this case, they had hired legal counsel to represent them in certain interactions with Defendants.

9

cv-01077-LHK, 2010 WL 3325615, at *2 (N.D. Cal. Aug. 20, 2010) ("[A] request for loan origination documents does not, as a matter of law, constitute a QWR . . . .").

Additionally, Plaintiffs refer to an August 16, 2010 letter, (Ex. BE to Compl., Doc. 1), which they characterize as a "Demand Letter." (Third Am. Compl. ¶ 15). It is not clear whether Plaintiffs intend to allege in their Third Amended Complaint that the Demand Letter is a QWR that could form the basis of a RESPA violation.[7] In the letter, Plaintiffs' attorney listed a number of purported errors with Plaintiffs' account and stated that to "avoid litigation on this matter" Bank of America must forward to their attorney $5,000, plus $1,000 in attorney's fees and costs, in addition to "correct[ing] [Plaintiffs'] account and notify[ing] each credit reporting agency of Bank of America's errors." (Ex. BE to Compl.). Defendants argue that the Demand Letter neither purports to be nor is a QWR.

Even if the Demand Letter were a QWR, Plaintiffs allege only that Defendants "'refused' to comply" with the letter's demands. (Third Am. Compl. ¶ 15). They do not allege that Defendants failed to respond to the letter in compliance with RESPA. In fact, Plaintiffs attached to their Second Amended Verified Complaint a letter that itself indicates that Defendants had responded to the Demand Letter on October 29, 2010. (Doc. 31-7 at 25). Plaintiffs do not contest this evidence in their Response. Accordingly, even assuming that the August 16, 2010 letter constitutes a QWR, there is not a genuine dispute as to whether Defendants responded to that letter in compliance with RESPA.

[7] In the Third Amended Complaint, Plaintiffs describe the March 24, 2010 letter and the July 10, 2010 letter as "qualified written requests," but they describe the August 16, 2010 letter only as a "Demand Letter." (Third Am. Compl. ¶¶ 15,16).

Moreover, Plaintiffs have not presented evidence that they suffered actual damages as a result of any of Defendants' alleged RESPA violations, nor have they presented evidence that they are entitled to statutory damages.  Under RESPA, a plaintiff may obtain "actual damages to the borrower as a result of the [defendant's failure to comply with RESPA]" and "in case of a pattern or practice of noncompliance . . . an amount not to exceed $1,000." 12 U.S.C. § 2605(f)(1).  Plaintiffs allege that "[their] damages were proximately caused by Defendant BAC's noncompliance with . . . RESPA" and that "Defendant BAC has engaged in a pattern and practice of 'non-compliance' with the requirements of . . . RESPA." (Third Am. Compl. ¶ 45).  Defendants argue that Plaintiffs "make no effort to allege entitlement to anything other than statutory damages" and that Plaintiffs have not presented any evidence to show they are entitled to such damages. (Defs.' Mot. for Summ. J. at 7).

In response, Plaintiffs state that "[u]nder RESPA, Plaintiffs would only be entitled to statutory damages of $1,000.00 per violation." (Pls.' Resp. at 5).  This statement appears to acknowledge that Plaintiffs have limited their RESPA claim to one for statutory damages.  In any event, Plaintiffs' allegation that "Plaintiffs' damages were proximately caused by Defendant BAC's noncompliance" is not evidence of actual damages.  Furthermore, there is no genuine dispute of material fact as to whether Defendants have engaged in a "pattern or practice" of RESPA violations.  Even if Defendants failed to send Plaintiffs a proper transfer notice under § 2605(c), a single RESPA violation is not evidence of a "pattern or practice" of violations. See, e.g., Davis v. Greenpoint Mortg. Funding, Inc., Civil Action No. 1:09-cv-2719-CC-LTW, 2011 WL 7070222, at *5 (N.D. Ga. Sept. 19, 2011).

In sum, there is no genuine dispute of material fact concerning whether Defendants failed to respond to any QWR in compliance with RESPA, nor have Plaintiffs presented evidence that they are entitled to actual damages or statutory damages. Accordingly, Plaintiffs' claim under 12 U.S.C. § 2605(e) fails as a matter of law.

### 2.    § 2605(c)

Pursuant to § 2605(c), "[e]ach transferee servicer to whom the servicing of any federally related mortgage loan is assigned, sold, or transferred shall notify the borrower of any such assignment, sale, or transfer . . . not more than 15 days after the effective date of transfer" unless certain exceptions apply.

Plaintiffs allege that Defendants did not properly notify them that their loan had been transferred to BAC from the original lender, TBW. (Third Am. Compl. ¶ 14). Although the loan was transferred to BAC in September 2009, Plaintiffs claim that they did not become aware of the transfer "until their bi-weekly mortgage program . . . advised them on the telephone that they incorrectly submitted [their] September 2009 payment to [TBW]." (Id.). Defendants have submitted a transfer notice from BAC addressed to Plaintiffs and dated August 23, 2009, (Ex. C to Ettori Decl.), but Plaintiffs dispute whether Defendants actually sent it on the date printed on the letter,[8] (Pls.' Resp. at 4).

Nevertheless, Plaintiffs' failure to present evidence of an actual injury or a pattern or practice of RESPA violations renders the issue moot. As explained above, even if

---

[8] The Declaration of Paul W. Ettori in Support of Defendants' Motion for Summary Judgment (Doc. 58) attaches the letter as Exhibit C and declares that the exhibit is a "true and correct copy of [pages from] Defendants' Response to Plaintiffs' First Request for Production, evidencing a letter dated August 23, 2009 from Bank of America Home Loans to Plaintiffs."

BAC did not send timely notice of the transfer, a single RESPA violation is not evidence of a "pattern or practice of noncompliance." Davis, 2011 WL 7070222, at *5. Therefore, Plaintiffs claim under 12 U.S.C. § 2605(c) fails as a matter of law.

### C. Count Two—Fraudulent Misrepresentation

"In the state of Florida, relief for a fraudulent misrepresentation may be granted only when the following elements are present: (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and, (4) consequent injury by the party acting in reliance on the representation." Johnson v. Davis, 480 So. 2d 625, 627 (Fla. 1985).

Plaintiffs offer a litany of allegedly false statements relating to their loan modification application and the servicing of their account.   The core of these allegations is that BAC told Plaintiffs they would qualify for a loan modification if they defaulted on their loan and that BAC told them that they had been approved for a loan modification after they defaulted. (Third Am. Compl. ¶¶ 17, 49).

Plaintiffs have not, however, presented evidence that they have suffered any injury as a result of acting in reliance on any of these alleged misrepresentations. Plaintiffs allege that they have suffered "monetary, emotional, physical, and other damages as a result" of relying on the alleged misrepresentations. (Id. ¶ 53). Beyond these general allegations, though, the closest Plaintiffs come to presenting evidence of injury is in stating that they continued to make mortgage payments and home improvements in reliance on the alleged misrepresentations.[9]   (Pls.' Resp. at 7).

---

[9] Plaintiffs also attempted to introduce a psychologist's treatment report to show they suffered mental suffering and other stress-related injuries as a result of Defendants' conduct. That report was

13

According to Plaintiffs,[10] "[they] continued to make repairs to [their] home, ask[ed] for personal loans, sold personal items of sentimental value, and withdrew money from [one of their] 401K [accounts] which included penalties, in order to continue paying their mortgage." (Id.). But Plaintiffs have not alleged that they have lost their home,[11] nor have they produced any other evidence to show that the money they spent paying their mortgage and improving their home amounted to an injury. Consequently, Plaintiffs' have not presented evidence that they suffered injury in reliance on Defendants' alleged misrepresentations. Their claim for fraudulent misrepresentation therefore fails as a matter of law.

## IV. Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendants' Motion to Dismiss (Doc. 53) is **GRANTED** in part and **DENIED** in part. The motion is **GRANTED** with respect to Counts Three (RICO) and Four (Infliction of Emotional Distress) and **DENIED** with respect to Counts One (RESPA) and Two (Fraudulent Misrepresentation). Counts Three and Four of the Third Amended Verified Complaint (Doc. 49) are **DISMISSED** with prejudice.

---

stricken because the Plaintiffs failed to disclose it in accordance with Federal Rule of Civil Procedure 26(a). (Doc. 65). Moreover, even if that evidence had been admitted, Plaintiffs have not suggested how the alleged injuries resulted from their reliance on any misrepresentations, and it is also doubtful whether those injuries would even be cognizable under a misrepresentation claim. See Restatement 2d Torts § 549 (damages for fraudulent misrepresentation are limited to pecuniary losses); Balashak v. Royal Caribbean Cruises, Ltd., No. 09-21196-CIV, 2010 WL 457137, at *3 (S.D. Fla. Feb. 4, 2010).

[10] Plaintiffs provide these details in their Response to Defendants' Motion for Summary Judgment, but they do not point to any affidavit in the record for support. Nonetheless, these allegations would not establish an injury even if proven true.

[11] The Court notes, without relying on this fact, that Plaintiffs continue to list the address of the home at issue here as their mailing address in their Certificates of Service filed in this case. (See Doc. 72 at 7) (listing the Plaintiffs' address as of October 3, 2012)).

2. Defendants' Motion for Summary Judgment (Doc. 57) is **GRANTED** in part and **DENIED** as moot in part.  It is **GRANTED** with respect to Counts One (RESPA) and Two (Fraudulent Misrepresentation) and **DENIED** as moot with respect to Counts Three and Four.

3. The Clerk is directed to enter a judgment providing that Plaintiffs take nothing from Defendants on Plaintiffs' claims.

4.  All other pending motions are **DENIED as moot**.  The Clerk shall close this file.

**DONE** and **ORDERED** in Orlando, Florida on October 22, 2012.

JOHN ANTOON II
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties